United States District Court
Southern District of Texas
**ENTERED**
March 15, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MARCUS EDWARD ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-23-3940 |
| | § | |
| | § | |
| HARRIS COUNTY JAIL, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Marcus Edward Adams sues the Harris County Jail, alleging multiple violations of his constitutional rights while he was detained there. (Docket Entry No. 4). Adams, representing himself, filed this suit after he was released on bond. The court granted Adams's motion to proceed without paying the filing fee. (Docket Entry No. 7). At the court's request, Adams filed a more definite statement of his claims. (Docket Entry No. 9). Because Adams is proceeding without paying the filing fee, the court is required to closely examine his claims and dismiss the complaint in whole or in part if it determines that it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). After reviewing Adams's amended complaint and more definite statement, the court dismisses his action. The reasons are explained below.

### I.    Background

Publicly available records show that Adams was arrested on several criminal charges in October 2022 and incarcerated in the Harris County Jail. *See* Case Inquiry, www.hcdistrictclerk.com (last visited March 11, 2024). In July 2023, he was released from the Jail on bond pending state criminal proceedings on a charge of felony stalking. *Id.*

On October 17, 2023, Adams filed a letter asking the court to provide him with the forms necessary to bring a claim against the Harris County Sheriff's Office, which he contended was the entity "responsible for happenings within the Jail." (Docket Entry No. 1). The court construed Adams's request as an attempt to file a civil rights action under 42 U.S.C. § 1983, and it provided him with a blank form for filing a prisoner civil rights complaint. (Docket Entry No. 3).

On October 30, 2023, Adams filed his amended complaint under § 1983, naming the Harris County Jail as the only defendant.[1] (Docket Entry No. 4). In this amended complaint, Adams alleges that while he was in the Jail he was "subjected to cruel and unusual punishment"; he was "beaten via the solicitation from guard" and "accosted while in medical area"; he was "made defendant in internal court system of jail" and "subjected to accusation of contraband"; and he had items "stolen from [him] by inmates and guards." (*Id.* at 5). Adams asks the court to hold the Jail accountable and to award him "damages and compensation." (*Id.*). He also filed a motion seeking to proceed without paying the filing fee, which the court granted. (Docket Entries Nos. 5, 7).

As part of the initial screening required by 28 U.S.C. § 1915(e)(2), the court ordered Adams to file a more definite statement of his claims. (Docket Entry No. 8). In his response, Adams alleged that the Jail subjected him to cruel and unusual punishment by: providing "inadequate housing"; by repeatedly moving him to different housing; subjecting him to long wait times in cold areas; exposing him to light during the nighttime hours; denying him toilet paper when he was in a segregation cell; and charging him excessive prices at the Jail commissary. (Docket Entry

---

[1]Adams also lists the Harris County Court System as a defendant, but all his factual allegations relate to events that occurred at the Jail. (Docket Entry No. 4, pp. 4-5). In addition, Adams filed a separate action in which he specifically raised his claims against the Court System. *See Adams v. Harris County Court System*, No. 4:23-cv-3370 (S.D. Tex. Nov. 6, 2023). That action was dismissed and is currently on appeal to the Fifth Circuit. *See Adams v. Harris County Court System*, Appeal No. 23-20561 (5th Cir.). Because Adams alleges no facts in either his amended complaint or the more definite statement filed in this case that attempt to state a claim against the Harris County courts, the court concludes that his only claims in this action are against the Jail.

No. 9, pp. 1, 4-5).  Adams also alleged that the Jail has "unsanitary conditions" in relation to food handling and "toilet and sink combinations."  (*Id.* at 7).  He did not identify the dates on which these conditions occurred or indicate how frequently they occurred.

In addition to his allegations about these general conditions, Adams also alleged that unidentified detention officers "contracted/solicited that I be outnumbered by inmates and beaten until bloodied" on an unidentified date.  (*Id.* at 1).  He alleged that on another unidentified date, he was subjected to threats from other inmates after the television in the dayroom was turned off, while Jail officials investigated his complaints.  (*Id.* at 6).  Adams alleged that on yet another unidentified date, an unidentified detention officer "roughed me up after handcuffing me outside of the tank (i.e., slapping me in the back of the head knocking off my kufi/hat)."  (*Id.* at 1).  Adams alleged that the same officer also threatened him with pepper spray and pushed his head into the wall, although Adams did not state whether this happened on the same date.  (*Id.*)  Adams alleged that he was beaten by several inmates "while under the command of the aforementioned guard" on December 24, 2022.  (*Id.* at 2).  He alleged that he was punched in the nose by a cellmate, and that the incident ultimately left him with bruised ribs, a bloody nose, and soreness.  (*Id.*).  In answer to the court's questions about when these incidents occurred and who was involved, Adams asserted that the court could find that information by searching the Jail's records.  (*Id.* at 2, 5-7).

Adams also alleged that on December 24, 2022, Detention Officer Zarate "handled [him] roughly" when Adams was in the medical department.  (*Id.* at 3).  Adams alleged that Officer Zarate grabbed him, pushed him against a wall, accused him of using profanity towards another guard, and threatened to injure him if he did it again.  (*Id.*).  Adams alleged that he was handcuffed at the time and suffered lacerations to his wrists as a result.  (*Id.* at 3-4).

In addition to these claims of cruel and unusual punishment, Adams alleged that the Jail improperly subjected him to disciplinary proceedings on at least two occasions.  At one time, Adams was charged with assaulting another inmate, which was later found to be untrue.  (*Id.* at 5).  At a separate time, Adams was charged with possessing contraband, he was found guilty, and he was denied access to the commissary for a period of time as a result.  (*Id.* at 6-7).  Adams did not allege facts that could show why these disciplinary proceedings were improper, and he did not provide the dates of these disciplinary proceedings, again stating that the court could find that information through the Jail.  (*Id.* at 6).

Finally, Adams alleged that on various unidentified dates during his incarceration, both detention officers and inmates stole items from him, including stationery, "crafts," books, and food.  (*Id.* at 5-6).  He alleged that he filed claims with the Jail for the stolen items and that many items were never returned or were returned damaged.  (*Id.* at 6).  Adams alleged that he unsuccessfully filed claims with the Jail over the property.

Adams alleged that the Jail should be held responsible for all these actions and conditions because there are no cameras in many areas of the Jail, allowing both detention officers and other inmates to act without fear of punishment.  (*Id.* at 7).  Despite a specific question from the court, Adams did not seek leave to amend his complaint to sue any of the individual detention officers involved.  As relief for all the alleged violations, Adams alleged a right to recover "3-5 million as punitive damage" along with "policy change," although he did not identify any specific policy that should be changed.  (*Id.*).

## II.    The Legal Standards

### A.    Actions Under 42 U.S.C. § 1983

Adams sues the Jail under 42 U.S.C. § 1983.  "Section 1983 does not create any substantive

rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).  When the facts alleged by the plaintiff, taken as true, do not show a violation of a constitutional right, the complaint is properly dismissed for failure to state a claim.  *See, e.g., Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 421 (5th Cir. 2006).

**B.      Review Under 28 U.S.C. § 1915**

Because Adams is proceeding without paying the filing fee, the court must examine the legal and factual basis of his complaint and dismiss the action if it determines that the complaint "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint is "frivolous" for purposes of § 1915(e)(2)(B)(i) "if it lacks an arguable basis in law or fact."  *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992)).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the

facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up).

The question of whether a complaint fails to state a claim for purposes of § 1915(e)(2)(B)(ii) is determined by the same standard that applies under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rogers*, 709 F.3d at 407. Under that standard, the court considers whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In making this analysis, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). Because the determination of whether a claim is frivolous or fails to state a claim may be made before docketing, the court may dismiss a complaint under § 1915 even before service on the defendants. *See In re Jacobs*, 213 F.3d 289, 290 (5th Cir. 2000) (per curiam); *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

### C.    Pleadings from Self-Represented Litigants

Adams is representing himself. Courts construe pleadings filed by self-represented litigants under a less stringent standard of review. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even under this liberal standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*,

767 F.3d 475, 484 (5th Cir. 2014).  They must also "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (cleaned up).

## III.    Discussion

### A.    The Harris County Jail is Not a Proper Defendant.

Adams names the Harris County Jail as the only defendant in both his complaint and his more definite statement.  Despite being given the opportunity to name additional defendants, Adams has persisted in suing only the Jail.  Adams's complaint must be dismissed for failing to state a claim because the Jail is not a proper defendant.

A party to a lawsuit must have the capacity to sue or be sued.  *See* FED. R. CIV. P. 17(b). "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'"  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting FED. R. CIV. P. 17(b) (1991)).  Under Texas law, a county jail is not a separate legal entity capable of being sued.  *See Patterson v. Harris Cnty. Jail*, No. H-09-1516, 2009 WL 10705736, at *3 (S.D. Tex. May 29, 2009) ("As a division within the Harris County Sheriff's Department, the Harris County Jail does not qualify as an entity with capacity under the rules because it cannot sue or be sued.").  And while the Jail is operated by the Harris County Sheriff's Office, the Sheriff's Office also lacks the capacity to be sued.  *See Potts v. Crosby Ind. Sch. Dist.*, 210 F. App'x 342, 344-45 (5th Cir. 2006) (per curiam) (upholding the dismissal of claims against the Harris County Sheriff's Office on the grounds that it lacked the capacity to be sued).

Because the Jail lacks the legal capacity to be sued, it cannot be named as a defendant.  The court provided Adams with the opportunity to name other defendants, and he elected not to do so.

Adams's claims against the Jail are dismissed with prejudice under § 1915(e)(2)(B)(i) as legally frivolous.

**B.     Adams's Allegations Fail to State Claims for Relief under § 1983.**

Even if Adams had named defendants with the capacity to be sued, the court would dismiss his complaint because he does not allege facts sufficient to state claims upon which relief can be granted under § 1983.

**1.     Claims of Cruel and Unusual Punishment.**

Adams alleged a number of facts that he contends show that he was subjected to cruel and unusual punishment while in the Jail.  When considering whether the conditions of pretrial detention violate a detainee's constitutional rights, "the proper inquiry is whether those conditions amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "Not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Id.* at 537.

> Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention.  Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. . . .  Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility.  And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment.

*Id.*

Adams's allegations concerning the conditions at the Jail do not show that he was subject to unconstitutional "punishment."  His claim that he was repeatedly moved to different cells and housing units does not allege a constitutional violation because he, like all inmates, has no constitutional right to a particular housing assignment.  *See Meachum v. Fano*, 427 U.S. 215, 228-29 (1976) (inmates do not have a constitutional right to a particular housing assignment; once an

inmate has been lawfully detained, any decisions on housing are subject to the rules of the prison system and such "discretionary decisions . . . are not the business of federal judges"); *Maxwell v. Almanza*, No. 1:18-cv-0179-BU, 2021 WL 5969409, at *3 (N.D. Tex. Nov. 10, 2021) (inmates do not have a constitutional right to housing in a particular unit and requests to alter housing assignments "invite the Court to enmesh itself in precisely the type of prison operational minutiae that Courts should avoid"); *Hill v. Phan*, No. 13-cv-0583, 2016 WL 7157367, at *3 (W.D. La. Nov. 9, 2016) (an inmate's disagreement with this cell and bunk assignment did not rise to the level of a constitutional violation and is "precisely the kind of minutiae about day-to-day jail operations that the federal court should avoid absent a clear constitutional violation"), *report & recommendation adopted*, 2016 WL 7156779 (W.D. La. Dec. 7, 2016).  Absent a constitutional violation, federal courts will not second-guess a jail's decision on housing assignments for an individual inmate.  *See Meachum*, 427 U.S. at 229.

Adams's claim that the Jail was sometimes uncomfortably cold also does not state a claim for a constitutional violation.  While inmates have the right to protection from extreme cold, allegations of being exposed to merely uncomfortable temperatures are insufficient to support a finding of a constitutional violation.  *Compare Johnson v. Texas Bd. of Crim. Just.*, 281 F. App'x 319, 320 (5th Cir. 2008) (per curiam) (while exposure to cold temperatures without adequate protection may be a constitutional violation, vague allegations of being too cold at times are too "conclusory to state a claim of a sufficiently serious deprivation that denied the minimal civilized measure of life's necessities"); *and Porter v. Werner*, No. 1:16-cv-69-RHW, 2017 WL 599418, at *3 (S.D. Miss. Feb. 14, 2017) ("Plaintiff's conclusory assertions that the temperatures were 'ice cold' or 'real cold' do not rise to the level of severity needed to state an unconstitutional condition of confinement"); *with Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (inmate confined

outdoors overnight with "no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area—constituted a denial of 'the minimal civilized measure of life's necessities.'"); *and Murphy v. Walker*, 51 F.3d 714, 720-21 (7th Cir. 1995) (inmate in Illinois who was stripped of his clothing and placed in a cold cell with no bed, mattress, pillows, blankets, heat, or clothing for a week and a half in November stated a claim for cruel and unusual punishment). Adams's vague allegations of discomfort at various times during his incarceration do not rise to the level of a constitutional violation.

Adams's claim that the lights were left on at night does not state a claim for a constitutional violation. *See Chavarria v. Stacks*, 102 F. App'x 433, 437 (5th Cir. 2004) (a "policy of 24-hour illumination" does not necessarily rise to the level of cruel and unusual punishment). Neither does his claim of a temporary lack of toilet paper while in an observation cell. *See, e.g., McClure v. Foster*, 465 F. App'x 373, 375 (5th Cir. 2012) (per curiam); *Martin v. Live Oak Cnty. Jail*, No. 2:22-cv-00156, 2023 WL 2874461, at *23 (S.D. Tex. Jan. 23, 2023) ("The fact that Plaintiff was denied access to a shower on two occasions and toilet paper for a short period of time, while perhaps unpleasant, does not equate to the sort of unhealthy conditions or deprivation of the 'minimal civilized measure of life's necessities' necessary to allege a viable constitutional violation.") *report & recommendations adopted*, 2023 WL 2873382 (S.D. Tex. Apr. 10, 2023), *aff'd*, No. 23-40254, 2023 WL 7206638 (5th Cir. Nov. 1, 2023); *Hanson v. Richardson*, 2:06-cv-0178, 2008 WL 818893, at *4 (N.D. Tex. Mar. 27, 2008) (allegations that the inmate was denied regular showers or toilet paper, without more, do not amount to a constitutional "deprivation of the 'minimum civilized measure of life's necessities'"). Verbal threats, whether made by jail officials or fellow inmates, do not rise to the level of a constitutional violation. *See, e.g.,*

*Westbrook v. Treon*, 78 F. App'x 970, 972 (5th Cir. 2003) (per curiam) (citing *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).  And Adams's conclusory allegations of excessive commissary prices and unsanitary conditions are insufficient to establish that he was subjected to cruel and unusual punishment.

The allegations in Adams's amended complaint and more definite statement are insufficient to show that his constitutional right to be free from cruel and unusual punishment was violated by any actions of the Jail or its employees.  Even if Adams had identified a proper defendant, his claims for cruel and unusual punishment would be dismissed under § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

## 2.    Claims of Improper Disciplinary Proceedings.

In addition to his claims of cruel and unusual punishment, Adams alleged that his constitutional rights were violated when he was "made a defendant in [the] internal court system" of the Jail.  (Docket Entry No. 9, p. 5).  Even if Adams had named a proper defendant, he is not entitled to relief on these claims.

A prisoner cannot bring a § 1983 action seeking damages based on a conviction "until that conviction has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction or the length of his confinement." *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994).  A ruling in a prison disciplinary proceeding is considered a conviction for purposes of *Heck*.  *See Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards v. Balisok,* 520 U.S. 641, 644-45 (1997)). Because of this, claims challenging the outcome of a prison disciplinary proceeding and seeking damages as a result of that outcome are barred by *Heck* unless "the relevant conviction has been

reversed, expunged, or otherwise declared invalid." *Id.* at 189 (quoting *Edwards,* 520 U.S. at 645). But a claim seeking damages for the denial of a prisoner's procedural due process rights during prison disciplinary proceedings may proceed as long as the claim does not "call into question the lawfulness of the plaintiff's continuing confinement." *Mahogany v. Stalder*, 242 F. App'x 261, 263 (5th Cir. 2007) (per curiam) (citing *Heck*, 512 U.S. at 483, and *Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974)).

Despite being given the opportunity to provide additional facts about these claims, Adams did not allege that his disciplinary conviction for possessing contraband was ever reversed, expunged, or otherwise declared invalid or that his procedural due process rights were violated during the proceedings relating to the alleged assault. Even if Adams had identified a proper defendant, these claims would be dismissed under § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

### 3.    Claim of Theft of Property.

Adams also alleges that his constitutional rights were violated when detention officers and fellow inmates stole items from him. (Docket Entry No. 9, pp. 5-6). Even if Adams had identified a proper defendant, this claim fails to state a claim for relief under § 1983.

The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." But theft of property by a government employee violates the Fourteenth Amendment only if no meaningful and adequate state-law post-deprivation remedy for the loss is available. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984). A state-law post-deprivation remedy is considered meaningful and adequate even if the plaintiff might not be able to recover the full amount of his loss. *See Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008) (per curiam) (citing *Hudson,* 468 U.S. at 535). And when a

state-law post-deprivation remedy exists, a plaintiff may bring suit in federal court for the intentional loss or destruction of his property only if he first pursues the state-law remedy and relief is denied on grounds other than the merits of the claim.  *See Thompson v. Steele,* 709 F.2d 381, 383 n.3 (5th Cir. 1983).

Adams's claim that detention officers stole his property is premature, at best, because he did not allege that he pursued the post-deprivation remedy provided by Texas law.  *See Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir. 1994) ("In Texas . . . the tort of conversion fulfills [the post-deprivation remedy] requirement."); *see also* TEX. GOV'T CODE § 501.007 (permitting a recovery of up to $500.00 for an inmate's lost or damaged property).  Because a post-deprivation state-law remedy exists, Adams must pursue that remedy before filing suit on the loss of property in federal court.  *See Westbrook*, 78 F. App'x at 972 ("To the extent that Westbrook's personal possessions have been seized, his proper remedy is in the state courts.") (citing *Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995)).  Despite being given the opportunity to allege additional facts about these alleged thefts, Adams failed to show that he is entitled to relief.  Even if Adams had identified a proper defendant, his property claim would be dismissed as premature because Adams has not pursued his available state remedies.

### 4.    Claims Against Unidentified Detention Officers.

Adams's more definite statement contains numerous claims of alleged constitutional violations various detention officers, both named and unnamed.  He appears to allege that the Jail is responsible for the actions of those officers because they are Jail employees.  These allegations do not state a claim upon which relief can be granted.

Under § 1983, a municipal agency cannot be held separately liable for the acts of its employees.  *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Leffall v. Dallas*

*Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). "[I]nstead, the plaintiff must show that the local government's policy or custom violated the plaintiff's constitutional rights." *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) (citing *Hafer v. Melo,* 502 U.S. 21, 25 (1991)). "[T]he custom or policy [must] serve[] as the moving force behind the [constitutional] violation" at issue. *Meadowbriar Home For Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996). Alternatively, the plaintiff must demonstrate that his injuries result from the manner in which the policy was executed. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Neither Adams's complaint nor his more definite statement contains facts showing that any Jail custom or policy caused or was a "moving force" behind any violation of his constitutional rights. He did not identify a specific policy or custom. He did not allege facts showing how a policy or custom caused the alleged violations of his constitutional rights. Instead, he appears to seek to hold the Jail responsible solely based on the alleged actions of its employees. Because such a claim is not available under § 1983, Adams's claims that the Jail is liable not for its own policies but because of the acts of its employees are dismissed under § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

## 5. The Claim Against Officer Zarate.

In his more definite statement, Adams alleges that Detention Officer Zarate "handled [him] roughly," shoved him against a wall, accused him of using profanity with another detention officer, and threatened him "if it happened again." (Docket Entry No. 9, p. 3). Despite a direct question from the court asking Adams if he wanted to amend his complaint to name any defendant other

than the Jail, Adams did not seek leave to amend his complaint to name Officer Zarate as a defendant.

Construed liberally, these allegations appear to assert that Officer Zarate used excessive force.  A pretrial detainee states a claim for excessive force when he shows "that the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 396-97 (2015).  Whether the force used was objectively reasonable "turns on the facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Force is objectively unreasonable when (1) the action was taken with an expressed intent to punish; (2) the action was not "rationally related to a legitimate nonpunitive governmental purpose; or (3) the action "appear[s] excessive in relation to that purpose." *Id.*  The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399-400.

Adams's allegations do not satisfy this pleading standard.  Adams alleged that on an unidentified date, he was at the medical clinic waiting to see a provider.  (Docket Entry No. 9, p. 3).  "All of a sudden," Officer Zarate grabbed him while he was handcuffed, pushed him against the wall, accused him of using profanity with another guard, and threatened him if he did it again. (*Id.*).  Adams alleged that he suffered "minor lacerations" on his wrist because of Officer Zarate's actions.  Without further information, these allegations do not demonstrate that Officer Zarate's actions were objectively unreasonable in light of the need for order and institutional security.

Despite being given the opportunity to add defendants to this action, Adams has insisted that his claims are only against the Jail.  Because the Jail is not a proper defendant and cannot be liable solely because of the actions of its employees under § 1983, Adams's claim against the Jail

based on Officer Zarate's actions is dismissed under § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

### 6.     Claims Against an Unidentified Fellow Inmate.

Finally, Adams alleged that the Jail should be held responsible for injuries he suffered when he was punched by an unidentified fellow inmate on an unidentified date.  Even if Adams could identify a proper defendant, this claim would be dismissed for failing to state a claim.

To state a valid claim under § 1983, the plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *See West,* 487 U.S. at 48; *Gomez*, 18 F.4th at 775.  The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam).  The second element means that generally only *state* actors—not private parties—can be liable for violations of civil rights.[2]  *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1283 (5th Cir. 1985).

Adams's claim fails on both elements.  Even if Adams's allegations are taken as true, he has not identified any federal right that was violated when a fellow inmate punched him.  In addition, the inmate is a private party rather than a state actor.  *See Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 940 (1982) (a complaint challenging only private action does not state a cause of action under § 1983); *Cornish v. Corr. Servs. Corp.,* 402 F.3d 545, 549 (5th Cir. 2005) ("[P]rivate conduct, no matter how discriminatory or wrongful is excluded from § 1983's reach." (quoting

---

[2]Limited exceptions to this general rule exist when the plaintiff can show that the private actor was implementing an official government policy or when the private actor's actions are fairly attributable to the government.  *See Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 312 (5th Cir. 2011).  A private party who conspires with state actors to deprive another of his constitutional rights may also be considered a state actor.  *See Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004).  Adams's complaint does not allege facts showing that any of these exceptions apply to his case.

*Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003))).  This claim is dismissed under § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

### C.     Leave to Amend

The power to dismiss an action for failure to state a claim is "cabined by the requirements of basic fairness:  a district court may only dismiss a case *sua sponte* after giving the plaintiff notice of the perceived inadequacy of the complaint and an opportunity for the plaintiff to respond."  *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016) (citing *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014)).  The rule against dismissing an action without notice is subject to two exceptions: (1) if the dismissal is without prejudice; or (2) if the plaintiff has alleged his best case.  *Id.* (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

In this case, the court gave Adams notice of the inadequacies of his complaint and requested that he provide a more definite statement of his claims by answering numerous specific questions about his allegations.  Adams filed a response, but his answers to multiple questions were vague and conclusory.  He did not identify the individuals who allegedly violated his constitutional rights, he did not identify when the alleged violations occurred, and he did not provide many of the requested details about the alleged violations.  Instead, Adams suggested that this court should obtain the requested information directly from the Jail.

The court is not an investigative body, and it does not seek out evidence on behalf of litigants.  In addition, self-represented litigants must "plead sufficient facts that, when liberally construed, state a plausible claim to relief."  *E.E.O.C.*, 767 F.3d at 484 (cleaned up).  The court gave Adams an opportunity to cure the deficiencies of his original complaint, but he has not done so.  Leave to amend is therefore denied.

## IV.    Conclusion

Adams's complaint and amended complaint against the Harris County Jail, (Docket Entry Nos. 1, 4), are dismissed with prejudice for failing to state a claim.  All pending motions are denied as moot.  Final judgment is separately entered.  This dismissal will count as a "strike" for purposes of 28 U.S.C. § 1915(g).  The Clerk of Court will send a copy of this Memorandum Opinion and Order to the Three-Strikes List Manager at the following email: Three_Strikes@txs.uscourts.gov.

SIGNED on March 15, 2024, at Houston, Texas.

Lee H. Rosenthal
United States District Judge